UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DISTRICT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>IRFAN MOHAMMED,<br><br>DEFENDANT. | Case No. 1:25-cv-01499<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Securities and Exchange Commission (the "Commission") alleges as follows against Defendant Irfan Mohammed ("Defendant"):

## SUMMARY

1. This case concerns an investment fraud operated by the Defendant through his company Dgtal World LLC ("Dgtal World"). The Defendant falsely represented to fellow members of the Islamic community in Peoria, Illinois that Dgtal World had successful operations offering a payment processing system overseas and that he was expanding these services to companies in the United States for which he was seeking investors. Based on these claims, from at least January 2021 through March 2023, the Defendant received investments from three individuals in the amount of approximately $585,000. The Defendant represented that he would use these investor funds to expand Dgtal World and that investors would receive returns ranging from a set amount each month to either a percentage amount of the profits per month or a percentage return on investment per year.

2. The Defendant's representations to investors were false. Dgtal World had no operations, let alone a successful one. It did not have a payment processing system, and the Defendant did not use any of the investor funds to develop the business. Rather, the Defendant used the funds for personal expenses or other business pursuits.

3. Further, to sustain the scheme, the Defendant made payments to investors as if

they were investment returns from the business. These payments totaled approximately $144,780. In reality, the payments were either funded by the return of the investor's own funds or, in at least once other instance, a Ponzi payment sourced from another investor.

      4.      As a result of the scheme, investors lost approximately $385,220.

      5.      As a result of the conduct described herein, the Defendant violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a)-(c) [17 C.F.R. § 240.10b-5].

      6.      The Commission seeks permanent injunctions prohibiting the Defendant from violating, directly or indirectly, the securities laws by engaging in transactions, acts, practices, and courses of business of the kind alleged herein; disgorgement of all ill-gotten gains from the unlawful activity set forth in this Complaint together with prejudgment interest; civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and to permanently enjoin the Defendant from directly or indirectly participating in the issuance, purchase, offer or sale of any security other than for his own personal accounts.

## JURISDICTION AND VENUE

      7.      The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

      8.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78(e), and 78aa].

      9.      Defendant, directly or indirectly, made use of the means and instrumentalities of interstate commerce or the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

      10.      Venue for this action is proper in the Central District of Illinois under Section

22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business that form the basis for the violations alleged in this Complaint occurred within the Central District of Illinois. The Defendant and several investors were residents of this District at all relevant times and the Defendant communicated with investors, which included material misrepresentations, in this District.

## DEFENDANT

11.     **Irfan Mohammed**, age 40, is a resident of Peoria, Illinois. Irfan Mohammed was the Chief Executive Officer ("CEO"), sole employee, and sole owner of Dgtal World, a now defunct business he registered in Illinois and through which he sought investments. Irfan Mohammed was also a managing member of a halal grocery store in Peoria.

## FACTS

### I.     SCHEME TO DEFRAUD

12.     On or about August 22, 2018, Defendant incorporated Dgtal World in the State of Illinois as its sole owner, CEO, president, and registered agent.

13.     Starting in or about January 2021, the Defendant approached persons to invest in Dgtal World. Most of these persons, like the Defendant, were members of the Islamic community in Central Illinois. He told these potential investors that Dgtal World had successful operations as a payment processing company in Asia and that he was expanding its operations in the United States. He represented that Dgtal World had vendors interested in its services in Illinois and that he would use the investor funds to operate Dgtal World in the United States.

14.     During the period of the investment scheme described herein, the Defendant designed a website at dgtalworldusa.com, which claimed that Dgtal World was a leading software development company that provided services including payment processing, machine learning, data analytics, mobile app and website development, enterprise resource planning, and IoT (Internet of Things). For example, the website stated, "At Dgtal World, we are a leading software development company dedicated to delivering innovative and reliable solutions to our

3

clients…. Our team comprises highly skilled and experienced professionals who possess expertise in various domains, including AI, ML, point of sale, accounting, custom software, ERP, mobile apps, and website development." Further, the website stated, "We are a trusted IT Tech company …. With our expertise in software development and network infrastructure, we empower your business to thrive in the digital era."

15. On the website, the Defendant posted testimonials from purported clients located in Singapore and India. In later iterations of the website, there were also testimonials from businesses in Illinois. The testimonials included statements such as, "The AI-powered features significantly enhanced our customer experience by providing personalized recommendations and tailored user interfaces" and "Collaborating with their development team, our streamlined solution automates tasks and empowers data-driven decision-making, [which] has revolutionized our operations …."

16. In addition, the Defendant represented on the website that several persons worked as officers of Dgtal World along with him, including at least one person with technology experience who worked as an officer of a public company with operations in Asia.

17. Contrary to the Defendant's statements to investors and on the website, however, Dgtal World had no actual operations, no proprietary payment processing system, and no history of successful operations or as a leading software company. In addition, the testimonials on the website were fake, and no one worked for the company other than the Defendant.

18. Reasonable investors would have considered it material to their decision to invest in the Defendant's business that the company had no actual operations, no proprietary payment processing system, and no history of successful operations or as a leading software company. Reasonable investors also would have considered it material that the testimonials were fake and that no one worked for the company other than the Defendant.

19. The Defendant told investors that Dgtal World would return profits to them, which varied by written agreements with each investor and included (i) set amounts of $800, $4,000, $4,500, or $6,500 a month, (ii) a percentage of Dgtal World's profits per month of 7-

10%, or (iii) a percentage return on investment per year of 15%.

20. Reasonable investors would have considered it material to their decision to invest in the Defendant's business that the company had no history of successful operations and no proprietary payment processing system business through which to generate returns for investors.

21. Defendant provided written agreements to these investors with the header "Investment Agreement" (hereinafter the "Agreements"). In the Agreements, Defendant stated that he was seeking "investment" and "start-up capital." The Agreements stated that the investor was entering into them as an "investment for the purposes of deriving profit-sharing income from Dgtal World LLC." In return for investing, the Agreements stated that the investor would receive a limited ownership interest that (i) entitled the investor to a certain level of profit sharing, (ii) did not permit the investor to direct any of the company's operations, and (iii) did not make the investor a member of the LLC.

22. Three investors chose to invest approximately $585,000 in Dgtal World from approximately January 2021 through March 2023. The largest investor ("Investor A") invested $510,000, and the two other investors ("Investor B," and "Investor C") invested $40,000 and $35,000, respectively. The Defendant pooled these investor funds together in the bank accounts of Dgtal World.

## II. MISAPPROPRIATION OF INVESTOR FUNDS

23. After receiving the investor deposits, the Defendant transferred the money to other businesses, most notably a halal grocery store he was operating in Peoria, Illinois, or spent the money on personal expenses. None of the investors' Agreements made reference to the halal grocery store or any business other than Dgtal World. The Defendant also used money transferred to the bank accounts of the halal grocery store to pay for his personal expenses, including rent and travel.

24. The Defendant did not use the investor funds to operate a payment processing business as he had told the investors he would do both verbally and as reflected in the investors' Agreements.

25. Through his misappropriation of the investors' funds, the Defendant received a total benefit of approximately $385,220.

## III.  FURTHER INDUCEMENT AND PONZI PAYMENTS

26. To lull investors along into thinking their investment was successful and generating a return, the Defendant used approximately $144,780 of investor funds to make sham payments to investors, including at least one Ponzi payment.

27. Specifically, the Defendant made 14 consecutive monthly payments worth nearly $98,000 to Investor A. The Defendant represented that these payments were the investor's shared profits in the business. All of these payments, however, were sham payments from Investor A's own deposits or, in at least one other instance, sourced directly from another investor's deposit as a Ponzi payment.

28. The Defendant made the first of the 14 months of consecutive payments on or about February 25, 2021, in the amount of $5,000 to Investor A. Investor A believed, based on the Defendant's representations, that this payment was his share of the profits from Dgtal World's operations, and the amount was consistent with the return promised in his Agreement.

29. In fact, the $5,000 the Defendant paid to Investor A on or about February 25, 2021, was sourced from Investor B's investment of $40,000 with Dgtal World on or about February 24, 2021. Dgtal World's bank accounts never received any profits as it had no actual operations and no revenue.

30. As a result of the February 25, 2021, $5,000 payment and believing that the investment was earning a return, Investor A made a further investment of $50,000 on or about March 13, 2021.

31. The Defendant made the second of the 14 consecutive monthly payments to Investor A on or about March 26, 2021, in the amount of $5,301.26. Investor A believed the payment to be a further share of the profits of Dgtal World, and the amount was consistent with the return promised in his Agreement, which had been increased subsequent to his additional investment on March 13, 2021.

32. The $5,301.26 the Defendant paid to Investor A on or about March 26, 2021, was sourced solely from Investor A's prior investments. Again, Dgtal World's bank accounts prior to this time had not received, and, at all times thereafter, did not receive, any profits as it had no actual operations and thus no revenue.

33. As with the prior payment, Investor A made a further investment of $100,000 on or about April 21, 2021, believing that his original investment was earning a return.

34. The Defendant also attempted to obtain further investment from Investor B through a false statement. In or around March 2022, the Defendant approached the investor and showed him a screenshot of a $250,000 account balance from a brokerage statement on his phone. The Defendant represented that all the funds in the account were the profits of Dgtal World. All of the funds, however, were from the money Investor A had invested with Dgtal World; none of the money in the account was sourced from profits of the business.

## IV. THE INVESTMENTS WERE OFFERED AND SOLD AS SECURITIES

35. As described above, including, but not limited to, in paragraphs 1 and 22, investors invested money in the Defendant's company, Dgtal World.

36. As described above, including, but not limited to, in paragraphs 1, 13, and 22, the investors invested in a common enterprise by co-investing or pooling their investments in Dgtal World. The Defendant pooled their investments together in the same Dgtal World bank accounts for the purpose of earning profits on their pro rata share of investment in the business.

37. As described above, including, but not limited to, in paragraphs 1 and 19-21, investors in Dgtal World had an expectation of profits derived from the efforts of the Defendant. The Defendant offered investors monthly or annual passive income varying from a set amount of $800, $4,000, $4,500, or $6,500 a month to either a percentage amount of the profits per month of 7-10 percent or a percentage return on investment per year of 15 percent, which was reflected in each investor's Agreement. The Defendant – not the investor – operated the business and the Agreements expressly stated that each investor was not permitted to direct any of the company's operations and was not a Member of the LLC. Defendant held himself out as the CEO of the

Dgtal World and ultimately responsible for its leadership, management and prospects for growth. As a result, investors potential for returns were dependent on Defendant's ability to generate income and profits for Dgtal World.

## V.   THE DEFENDANT ACTED WITH SCIENTER

38.  As described above, including but not limited to, in paragraphs 1 and 12-18, the Defendant acted with scienter by knowingly or at least recklessly making false representations to investors that Dgtal World had a history as a leading software development company with successful operations as a payment processing company in Asia. The Defendant had incorporated the entity in 2019 and at all times acted as its sole officer and owner and the only person with access to Dgtal World's bank accounts. The Defendant knew, or was reckless in not knowing, that his representations concerning the history, current operations, success, and prospects of the business he started were false.

39.  As described above, including but not limited to, in paragraphs 1, 13, 21, 23, and 24, the Defendant acted with scienter by representing to investors that he would invest their money in expanding the operations of Dgtal World, but then misappropriating all of the investors funds for purposes other than Dgtal World. As a result, the Defendant knew or was reckless in not knowing that his representations concerning how he would use their funds were fictitious and untrue.

40.  As described above, including but not limited to, in paragraphs 26-34, the Defendant acted with scienter by representing to investors that he was distributing the profits of the business through payments to them and by representing to Investor B that the account balance of around $250,000 from a screenshot on his phone reflected the profits from the business. The Defendant knew or was reckless in not knowing that Dgtal World had not received any income or generated any revenue, that the payments to the investors were sham payments sourced from their own deposits or deposits of other investors, and that the $250,000 account balance was similarly sourced only from investors.

## FIRST CAUSE OF ACTION

### Violation of Section 17(a) of the Securities Act

### [15 U.S.C. § 77q(a)]

41. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40, above.

42. By engaging in the conduct described above, the Defendant, in the offer or sale of securities, and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material facts of by omitting to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the buyer.

43. By reason of the foregoing, The Defendant, directly or indirectly violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CAUSE OF ACTION

### Violation of Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)]

### and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

44. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40, above.

45. The Defendant, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

46. By reason of the foregoing, the Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Finding that the Defendant committed the violations of the federal securities laws as alleged in this Complaint;

**II.**

In forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant from:

a. violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; and
b. violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**III.**

In forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining the Defendant from directly or indirectly participating, including, but not limited to, through any entity he owns or controls, in the issuance, purchase, offer, or sale of any security except for the purchase and sale of securities for his own personal accounts.

**IV.**

Ordering the Defendant to disgorge all ill-gotten gains obtained as a result of the acts or courses of conduct alleged in this Complaint, together with prejudgment interest thereon, pursuant to Section 21(d)(3), (d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)].

**V.**

Ordering the Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities

Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VI.

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Granting such other and further relief as this Court may determine to be just and necessary.

Dated: December 12, 2025

*Matthew B. Reisig*
Matthew B. Reisig
N.Y. Bar No. 4898094
(202) 551-6429 / reisigm@sec.gov

David A. Nasse
D.C. Bar No. 1002567
(202) 551-4426 / nassed@sec.gov

100 F Street NE
Washington, DC 20549

*Attorneys for Plaintiff*
*Securities and Exchange Commission*